# 25-2630(L)
## 25-2904(CON)

# United States Court of Appeals
### *for the*
## Second Circuit

ETON PARK CAPITAL MANAGEMENT, L.P.,
ETON PARK MASTER FUND, ETON PARK FUND, L.P.,

*Plaintiff-Appellees,*

– v. –

YPF S.A.,

*Defendant-Appellant,*

ARGENTINE REPUBLIC,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## PAGE-PROOF BRIEF FOR APPELLANT

MARK P. GOODMAN
SHANNON ROSE SELDEN
JAMES J. PASTORE
WENDY B. REILLY
J. ROBERT ABRAHAM
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000

*Counsel to Appellant YPF S.A.*

## CORPORATE DISCLOSURE STATEMENT

Appellant YPF S.A. is a publicly held corporation organized under the laws of the Republic of Argentina.  It has no publicly held parent corporation, and no publicly held corporation owns 10% or more of YPF S.A.'s stock.

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................1

JURISDICTIONAL STATEMENT ..............................................................8

STATEMENT OF THE ISSUES ................................................................10

STATEMENT OF THE CASE....................................................................12

I. Factual Background...........................................................................12

II. Procedural History ...........................................................................14

    A. YPF Prevailed In The Underlying Litigation ...........................14

    B. Plaintiffs Attempt To Relitigate YPF's Liability In Post-Judgment Proceedings Against The Republic .........................18

    C. YPF's Orders To Show Cause And Supplemental Briefing....................20

    D. The District Court's Orders And Instant Appeals .................21

SUMMARY OF ARGUMENT ....................................................................24

STANDARD OF REVIEW .........................................................................29

ARGUMENT ...............................................................................................30

I. The District Court Erred By Holding Plaintiffs' Pursuit Of YPF As A Purported Alter Ego Is Not Equivalent To A Cause Of Action For Liability ..............................................................................................30

II. The District Court Erred In Exercising Ancillary Jurisdiction Over Plaintiffs' Pursuit of YPF As A Purported Alter Ego ......................32

III. The District Court Erred In Permitting Discovery From And About YPF In The Absence Of An Identified Exception To YPF's Immunity And Any Pleading ...............................................................................37

    A. YPF Is Immune Under The FSIA From Discovery About Its Putative Alter Ego Status................................................37

    B. Plaintiffs' Pre-Complaint Discovery Into YPF's Putative Alter Ego Status Is Prohibited................................................41

IV. The District Court Erred In Denying YPF's Intervention Motion And Appointing The Republic To Represent YPF's Interests..................42

    A. YPF Satisfies The Test For Intervention As Of Right And By Permission .........................................................................42

1. YPF's Motion Was Timely .................................................................43

2. Appointing The Republic To Represent YPF's Interests Violates The Strong Legal Presumption Of Independence To Which YPF Is Entitled ..................................................48

B. Barring YPF From Directly Defending Itself Against Plaintiffs' Alter Ego Pursuit Violates Its Right To Due Process.......................................49

V. The District Court Erred By Finding *Res Judicata* Does Not Preclude Plaintiffs' Relitigation Of YPF's Liability Under An Alter Ego Theory ........53

A. Plaintiffs' Alter Ego Theory Is Barred By *Res Judicata* ........................54

B. YPF Is Being Deprived Of The Fundamental Repose To Which It Is Entitled By Virtue Of The Final Judgment In Its Favor ........................59

C. The District Court Erred By Denying YPF's Request To Enjoin Plaintiffs From Pursing YPF As An Alter Ego Of The Republic...........61

CONCLUSION...................................................................................63

iii

# TABLE OF AUTHORITIES

**Cases**

*Allen v. McCurry*,
449 U.S. 90 (1980)...................................................................53, 54, 63

*Arch Trading Corp. v. Republic of Ecuador*,
839 F.3d 193 (2d Cir. 2016) .....................................................36, 37, 39

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989).............................................................................36

*Aurelius Cap. Partners, LP v. Republic of Argentina*,
584 F.3d 120 (2d Cir. 2009) ..............................................................29, 49

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling
Co.*,
581 U.S. 170 (2017).............................................................................38

*Brennan v. N.Y.C. Bd. of Educ.*,
260 F.3d 123 (2d Cir. 2001) ..............................................................29, 43

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
250 F.3d 171 (2d Cir. 2001) ..............................................................44, 46, 47

*Catanzano v. Wing*,
103 F.3d 223 (2d Cir. 1996) .................................................................46

*Coleman v. Tollefson*,
575 U.S. 532 (2015).............................................................................54

*Comm'r v. Sunnen*,
333 U.S. 591 (1948).............................................................................60

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
932 F.3d 126 (3d Cir. 2019) ..........................................................*passim*

*E. Potato Dealers, Inc. v. Dibble & Miller, P.C.*,
363 F. App'x 819 (2d Cir. 2010) ............................................................46, 47

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)............................................................................62

iv

*EDP Med. Comput. Sys., Inc. v. United States*,
480 F.3d 621 (2d Cir. 2007) ...............................................................29

*EM Ltd. v. Banco Cent. De La Republica Argentina*,
800 F.3d 78 (2d Cir. 2015) ............................................................38, 61

*EM Ltd. v. Republic of Argentina*,
389 F. App'x 38 (2d Cir. 2010) .............................................................8

*Epperson v. Ent. Express, Inc.*,
242 F.3d 100 (2d Cir. 2001) ....................................................20, 31, 34

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
397 F. Supp. 3d 323 (S.D.N.Y. 2019) ..................................................50

*Expert Elec., Inc. v. Levine*,
554 F.2d 1227 (2d Cir. 1977) ..............................................................63

*Federated Dep't Stores, Inc. v. Moitie*,
452 U.S. 394 (1981)............................................................................60

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
150 F.3d 172 (2d Cir. 1998) ...........................................................50, 61

*First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*,
462 U.S. 611 (1983).....................................................................*passim*

*Gater Assets Ltd. v. AO Moldovagaz*,
2 F.4th 42 (2d Cir. 2021) ...............................................................38, 49

*Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*,
764 F.3d 210 (2d Cir. 2014) ................................................................29

*Harris-Clemons v. Charly Trademarks Ltd.*,
751 F. App'x 83 (2d Cir. 2018) ...........................................................48

*Hart Steel Co. v. R.R. Supply Co.*,
244 U.S. 294 (1917)............................................................................60

*In re Alper Holdings USA, Inc.*,
398 B.R. 736 (S.D.N.Y. 2008) ............................................................41

v

*In re AOL Time Warner, Inc. Sec. & 'ERISA' Litig.*,
   2007 WL 1856550 (S.D.N.Y. June 27, 2007) ......................................................62

*In re Backer*,
   2010 WL 2816789 (S.D.N.Y. July 16, 2010)........................................................41

*In re Lehman Bros. Holdings Inc.*,
   697 F.3d 74 (2d Cir. 2012) ...................................................................................9

*In re N.Y.C. Policing During Summer 2020 Demonstrations*,
   27 F.4th 792 (2d Cir. 2022) ................................................................................49

*In re Petition of Austin*,
   2013 WL 5255125 (S.D.N.Y. July 16, 2013)........................................................41

*In re Teltronics Servs., Inc.*,
   762 F.2d 185 (2d Cir. 1985) ....................................................................53, 55, 57

*Knox v. Orascam Telecom Holding S.A.E.*,
   477 F. Supp. 2d 642 (S.D.N.Y. 2007) ................................................................32

*Life Techs. Corp. v. Govindaraj*,
   931 F.3d 259 (4th Cir. 2019) ..............................................................................51

*Morgan v. Monello*,
   2023 WL 6389077 (S.D.N.Y. Oct. 2, 2023)........................................................59

*Nelson v. Adams USA, Inc.*,
   529 U.S. 460 (2000)............................................................................................51

*Nykcool A.B. v. Pac. Fruit Inc.*,
   2012 WL 1255019 (S.D.N.Y. Apr. 16, 2012) ..............................31, 33, 42, 49

*Peacock v. Thomas*, 516 U.S. 349 (1996)............................................31, 32, 33, 35

*Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co., Ltd.*,
   476 F.3d 140 (2d Cir. 2007) ..............................................................................38

*Petersen Energia Inversora S.A.U. v. Argentine Republic & YPF S.A.*,
   895 F.3d 194 (2d Cir. 2018) ..........................................................................8, 15

*Petersen Energía Inversora S.A.U. v. Argentine Republic*,
   2016 WL 4735367 (S.D.N.Y. Sept. 9, 2016) ......................................................34

*Peterson v. Bank Markazi*,
121 F.4th 983 (2d Cir. 2024) ...............................................................*passim*

*Petrella v. Siegel*,
843 F.2d 87 (2d Cir. 1988) .............................................................54

*Reed v. Allen*,
286 U.S. 191 (1932)........................................................................60

*Republic of Argentina v. NML Cap., Ltd.*,
573 U.S. 134 (2014)...................................................................*passim*

*Republic of Philippines v. Pimentel*,
553 U.S. 851 (2008)........................................................................38

*Simon v. Republic of Hungary*,
812 F.3d 127 (D.C. Cir. 2016)....................................................34

*Soules v. Connecticut, Dep't of Emergency Servs. and Pub. Prot.*,
882 F.3d 52 (2d Cir. 2018) ..........................................................55

*Teamsters Loc. 404 Health Servs. & Ins. Plan v. King Pharms., Inc.*,
906 F.3d 260 (2d Cir. 2018) .........................................................39

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972)........................................................................48

*U.S. Postal Serv. v. Brennan*,
579 F.2d 188 (2d Cir. 1978) ........................................................47

*United States v. Pitney Bowes, Inc.*,
25 F.3d 66 (2d Cir. 1994) ............................................................46

*Vera v. Republic of Cuba*,
867 F.3d 310 (2d Cir. 2017) ........................................................29

*Waldman v. Vill. of Kiryas Joel*,
207 F.3d 105 (2d Cir. 2000) ....................................................58, 59

*Walters v. Indus. & Com. Bank of China, Ltd.*,
651 F.3d 280 (2d Cir. 2011) ........................................................29

vii

*Woods v. Dunlop Tire Corp.*,
  972 F.2d 36 (2d Cir. 1992) .................................................................55, 58

*Zenith Radio Corp. v. Hazeltine Rsch.*,
  395 U.S. 100 (1969)..........................................................................42, 49

*Zervos v. Verizon New York, Inc.*,
  277 F.3d 635 (2d Cir. 2002) ......................................................................9

**Statutes**

28 U.S.C. § 1291 ........................................................................................9

28 U.S.C. § 1292 ........................................................................................9

28 U.S.C. § 1330.................................................................................25, 39

28 U.S.C. § 1603 ........................................................................................2

28 U.S.C. § 1604.................................................................................2, 5, 38

28 U.S.C. § 1605 ........................................................................................2

**Other Authorities**

Fed. R. Civ. P. 3 ......................................................................................39

Fed. R. Civ. P. 24 .........................................................................42, 43, 47

Fed. R. Civ. P. 45 .........................................................................18, 44, 57

Fed. R. Civ. P. 69 ..............................................................................*passim*

*Liability*, BLACK'S LAW DICTIONARY (12th ed. 2024).............................30

*Liable*, BLACK'S LAW DICTIONARY (12th ed. 2024)..................................30

*Responsibility*, BLACK'S LAW DICTIONARY (12th ed. 2024) ...................30

U.S. CONST. amend. V .............................................................................50

## INTRODUCTION

These appeals arise from Plaintiffs' improper *seriatim* efforts to litigate the alleged liability of YPF S.A. ("YPF" or the "Company") in connection with the expropriation by the Republic of Argentina (the "Republic") of 51% of YPF's shares over a decade ago. Post-expropriation, YPF remains Argentina's largest, publicly-traded, independent energy company and a cornerstone of the country's economy. It employs 20,000 people and is a leader in oil and gas production, refining, and fuel distribution across Argentina. Aside from the Republic's stake, substantially all of the remaining 49% of YPF's shares are traded (directly in Argentina and via American Depositary Receipts in the United States), and are owned by major private funds, institutional and retail investors, and YPF employees.

In 2023, after eight years of hard-fought litigation, the District Court ruled in YPF's favor on summary judgment, finding it had no liability for the Republic's failure to make an allegedly required tender offer in connection with its expropriation of YPF's shares. At the same time, the District Court granted summary judgment against the Republic, ultimately finding it liable for $16.1 billion in damages.

Following entry of judgment, Plaintiffs initiated post-judgment enforcement proceedings against the Republic pursuant to Federal Rule of Civil Procedure 69.

1

In connection with those proceedings, Plaintiffs have pursued non-party discovery from YPF with the central purpose of shifting liability for the judgment against the Republic to YPF. *See, e.g.*, JA__ [Dkt.563, p.1] (discovery designed to determine whether YPF "may be liable for the state's debts").[1]  While Plaintiffs have been clear that imposing liability on YPF is their objective, they have avoided making a formal claim against YPF – and thus avoided giving YPF an opportunity to move to dismiss such claim – by proceeding pursuant to Rule 69.

The fundamental problem with Plaintiffs' use of Rule 69 to hold YPF "legally responsible" for the Republic's judgment, JA__ [Dkt.619, p.2], is that Plaintiffs cannot seek to transfer liability to YPF because they have not overcome YPF's immunity from the "jurisdiction of the courts of the United States" as an instrumentality under the Foreign Sovereign Immunities Act ("<u>FSIA</u>").  *See* 28 U.S.C. §§ 1603, 1604, 1605.  Moreover, Plaintiffs already tried – and failed – to hold YPF liable, so *res judicata* bars their alter ego claim.  Accordingly, YPF sought, by order to show cause, to enjoin Plaintiffs' further pursuit of YPF in the post-judgment enforcement proceedings against the Republic.  The District Court's denial of YPF's motion and exercise of ancillary jurisdiction over YPF constituted legal error in at least five respects.

---

[1] District Court materials cited in the Joint Appendix are from the docket in *Petersen Energia Inversora S.A.U.* v. *Argentine Republic*, No. 1:15-cv-02739 (S.D.N.Y.).

***First***, the District Court held Plaintiffs' pursuit of YPF as an alleged alter ego was not "a cause of action for liability but rather responsibility for the Republic's judgment," and therefore does not require an independent basis for jurisdiction. SPA10. That semantic distinction between imposing "liability" and "responsibility" is legally meaningless, elevates form over substance, and contradicts Supreme Court and Second Circuit precedent holding that alter ego claims are, by definition, liability shifting. It also ignores Plaintiffs' repeated concessions that they are pursuing YPF as an alter ego to satisfy their judgment against the Republic.

***Second***, the District Court erred in holding that it can exercise ancillary jurisdiction over Plaintiffs' attempt to shift "responsibility for the Republic's judgment" to YPF, and that Plaintiffs are not required to establish an independent basis for jurisdiction so long as they pursue YPF's alter ego liability solely against the Republic without filing a formal claim against YPF.

In reaching that erroneous conclusion, the District Court relied on the Third Circuit's decision in *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019), notwithstanding this Court's recent rejection, in *Peterson v. Bank Markazi*, of that use of *Crystallex* and its admonishment that, "to the extent that the *Crystallex* court based its jurisdictional holding on a determination that ancillary jurisdiction extends to post-judgment proceedings

3

against a foreign sovereign's instrumentality that was not party to the underlying merits proceeding, *we disagree*." 121 F.4th 983, 1000 n.6 (2d Cir. 2024) (emphasis added).[2]

*Third*, Plaintiffs' position – accepted by the District Court – that Plaintiffs' current pursuit of YPF is "just discovery" and thus does not intrude on YPF's immunity is wrong as a matter of law. In the absence of a "civil action against" YPF and a pleading establishing an applicable exception to YPF's immunity, the District Court has no jurisdiction to order YPF to produce discovery Plaintiffs intend to use to attempt to show that YPF is "responsible" for $16.1 billion in damages. Pursuit of liability-shifting discovery from and about YPF not only violates its immunity, but also the Federal Rules, which do not permit pre-complaint discovery into claims that may one day be brought.

Plaintiffs' misplaced reliance on *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014) to justify their pursuit of liability-shifting discovery from and about YPF proves that point. In *NML*, the discovery approved by the Supreme Court was sought from third-party banks that had not themselves asserted immunity, and the discovery was about the "foreign-sovereign *judgment debtor's*

---

[2] Although YPF was a party to the underlying proceedings, the District Court determined on summary judgment that YPF was not liable and dismissed it from the case. For purposes of the post-dismissal jurisdictional analysis, YPF is procedurally indistinguishable from Bank Markazi.

assets." *Id.* at 142 (emphasis added). Here, in contrast, Plaintiffs seek discovery from YPF aimed at showing that YPF is an alter ego of the Republic in the hopes of being able to seize a third-party non-debtor's own assets (*i.e.*, YPF's) "to satisfy [the] Court's judgment" against a judgment debtor (*i.e.*, the Republic). JA__ [Dkt.645, p.1]; JA__ [Dkt.619, p.2]. Absent an exception (which Plaintiffs have not even attempted to articulate), the FSIA immunizes YPF from "the jurisdiction of the courts of the United States," 28 U.S.C. § 1604, which precludes the District Court from compelling YPF to provide pre-suit, alter ego discovery whose core purpose is to shift liability to YPF.

**Fourth**, the District Court abused its discretion by denying YPF's motion to intervene as untimely, both because the District Court applied the wrong standard and because, under any standard, YPF's motion – made less than three months after the District Court compelled YPF's compliance with Plaintiffs' subpoena – was timely. In fact, while characterizing YPF's motion as too late, the District Court also found that it was too early – asserting that YPF's motion "put[] the cart before the horse" because "[t]o date, the only actions that Plaintiffs have taken with respect to YPF is alter ego *discovery*" and they "have not pursued liability against YPF for Plaintiffs' contract claims since the Court's March 31, 2023 finding." SPA10. Given the District Court's conclusion that the "only actions" Plaintiffs have taken are related to discovery, Plaintiffs would suffer no prejudice

5

from YPF's intervention to defend itself, rendering its motion timely under the applicable legal standard (which requires courts to consider not just the number of days that elapse before intervention is sought, but also any potential prejudice arising from intervention and whether the would-be interventor's interests are otherwise adequately represented).

The District Court compounded that error by holding "the Republic, as the majority shareholder of YPF, can adequately protect YPF's interests" with respect to Plaintiffs' pursuit of alter ego liability. SPA8. That determination violates the Supreme Court's directive that "instrumentalities of a foreign state are to be accorded a presumption of independent status." *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 627 (1983) ("<u>Bancec</u>"). It also violates YPF's due process rights by inhibiting it from participating directly in its own defense against efforts to shift liability in order to seize its property.

***Fifth***, the District Court erred in rejecting YPF's *res judicata* defense. For more than eight years, Plaintiffs pursued liability against YPF by arguing that the Republic "exercised total control of the Company's management," that "Argentina controlled YPF," and that YPF's internal governance was "materially impaired" by its "state ownership," such that it was fair to hold YPF liable for the Republic's actions. Plaintiffs even argued that it was an "incorrect premise that the Republic was, and is, independent of YPF." Having made those allegations, litigated them,

6

and lost, *res judicata* prohibits Plaintiffs from recycling and relitigating them under the banner of a different legal theory.

Forcing YPF to once again defend itself against a potential enterprise-crippling award of $16.1 billion in damages robs it of the very repose to which it is entitled under the law as a prevailing party. That is grossly unfair to YPF, its 20,000 employees, and its many minority shareholders and other constituents. It casts an unwarranted cloud over the operations of Argentina's largest energy producer, including its plans for expansion and the many joint ventures in which it is engaged with partners from around the world – some from the United States and Europe – to produce energy and continue to power the recovery of the Argentine economy.

Plaintiffs have been pursuing YPF for more than a decade; they had a full and fair opportunity to litigate their claims and theories; YPF prevailed; and, as a result, the prior hook for the District Court's exercise of jurisdiction over YPF no longer exists. It is time to put an end to Plaintiffs' meritless pursuit of YPF – under any theory – for the $16.1 billion awarded against the Republic. This Court should bar any further pursuit of YPF as an alleged alter ego of the Republic because it is immune from such claims, and because those claims are barred by *res judicata*.

7

## JURISDICTIONAL STATEMENT

Non-party and would-be intervenor YPF appeals (i) the District Court's September 18, 2025 order denying YPF's orders to show cause to allow YPF to intervene for a limited purpose in post-judgment proceedings and to permanently enjoin Plaintiffs' efforts to pursue YPF as a purported alter ego of the Republic on the basis of *res judicata* (the "September Order"), *see* SPA1-16; and (ii) the District Court's November 11, 2025 order denying YPF's motion for reconsideration of the September Order and embracing the exercise of ancillary jurisdiction over Plaintiffs' pursuit of YPF (the "November Order"), *see* SPA17-24. YPF filed timely notices of appeal of the September Order on October 17, 2025, JA__ [Dkt.822], and the November Order on November 12, 2025, JA__ [Dkt.836].

YPF is immune under the FSIA from Plaintiffs' attempts to use post-judgment proceedings, including discovery, to shift $16.1 billion in liability from the Republic to YPF. The District Court, accordingly, erred in asserting jurisdiction over YPF in those proceedings. This Court has appellate jurisdiction over YPF's challenge to the denial of its immunity under the collateral order doctrine, which "allows an immediate appeal from an order denying immunity under the FSIA." *Petersen Energia Inversora S.A.U. v. Argentine Republic & YPF S.A.*, 895 F.3d 194, 203, 211 (2d Cir. 2018) (citation omitted); *see also EM Ltd. v.*

8

*Republic of Argentina*, 389 F. App'x 38, 41 (2d Cir. 2010) (appeal from post-judgment enforcement order).

This Court has jurisdiction under 28 U.S.C. § 1292(a)(1) to review the District Court's denial of YPF's request to enjoin Plaintiffs' pursuit of YPF as an alter ego as barred by the doctrine of *res judicata*.  *See Zervos v. Verizon New York, Inc.*, 277 F.3d 635, 644-45 (2d Cir. 2002) (appellate jurisdiction exists to review orders "granting, continuing, modifying, refusing or dissolving injunctions").

This Court has appellate jurisdiction under 28 U.S.C. § 1291 over the District Court's denial of YPF's order to show cause to intervene in the post-judgment proceedings because "denials of intervention are final appealable orders." *In re Lehman Bros. Holdings Inc.*, 697 F.3d 74, 76 (2d Cir. 2012).

## STATEMENT OF THE ISSUES

1.      Whether the District Court erred in holding that Plaintiffs' pursuit of YPF (including through discovery aimed at imposing an obligation on YPF to satisfy the judgment issued against the Republic) is not "a cause of action for liability but rather responsibility for the Republic's judgment," and therefore does not require an independent basis for subject matter jurisdiction.

2.      Whether the District Court erred in holding that it can exercise ancillary jurisdiction over Plaintiffs' pursuit of alter ego liability against YPF, following the Third Circuit's approach in *Crystallex* rather than the Second Circuit's binding precedent, including in *Bank Markazi*.

3.      Whether the District Court erred in exercising ancillary jurisdiction over Plaintiffs' demands for alter ego discovery from and about YPF in the absence of a claim that establishes an applicable exception to YPF's FSIA immunity.

4.      Whether it was error to bar YPF from intervening in the post-judgment enforcement proceedings less than three months after the District Court compelled YPF to produce alter ego discovery (and before Plaintiffs have formally pled any alter ego claim), and to instead suggest that the Republic – a separate juridical entity from which YPF is presumed to be independent – could represent YPF's interests.

10

5.      Whether the District Court erred in concluding that *res judicata* does not prohibit Plaintiffs' second attempt to hold YPF liable for the Republic's actions, notwithstanding Plaintiffs' choice to refrain from bringing an alter ego claim against YPF in the previous eight years of litigation.

## STATEMENT OF THE CASE

### I.  Factual Background

YPF S.A. is a corporation (*sociedad anónima*) incorporated under the laws of Argentina and headquartered in Buenos Aires.  JA__ [Dkt.370, ¶1].  Since 1993, it has been a publicly traded corporation with shares listed on the Buenos Aires Stock Exchange and American Depositary Receipts ("ADRs") listed on the New York Stock Exchange.  JA__ [Dkt.370, ¶¶7–8]; JA__ [Dkt.370, ¶¶1, 4, 6]; JA__ [Dkt.112-2, p.7].  Today, YPF is Argentina's largest energy producer and among its most important companies – developing one of the world's most significant shale formations, expanding operations and engaging in numerous joint ventures with energy companies from the United States and around the world, enhancing Argentina's energy security and stability, and employing over 20,000 people. JA__ [Dkt.370, ¶¶1-2]; JA__ [Dkt.390, ¶2]; JA__ [Oct.16,2025 Hr. Tr., 5:24-6:1].

Between 2008 and 2011, Plaintiff Petersen, a major Argentine conglomerate, acquired YPF ADRs from Repsol S.A. ("Repsol"), representing an interest in approximately 25% of YPF's Class D shares.  JA__ [Dkt.370, ¶¶19-23, 22]. Plaintiff Eton Park, a now-defunct hedge fund, acquired YPF ADRs from November 2010 through March 2012.  JA__ [Dkt.370, ¶¶25-28]; JA__ [Dkt.390, ¶27].

12

On April 16, 2012, the Republic's Executive Branch appointed an intervenor who was temporarily granted the powers of YPF's Board of Directors and President, and also introduced a bill to have 51% of YPF's share capital "subject to expropriation" from Repsol as necessary to promote the public interest in achieving hydrocarbon self-sufficiency (the "Public Interest Law"). JA__ [Dkt.370, ¶¶32-33].

On May 7, 2012, the Public Interest Law became effective. JA__ [Dkt.370, ¶¶36-37]. At a June 4, 2012 shareholders meeting, the Republic voted the Repsol shares subject to expropriation and replaced YPF's board. JA__ [Dkt.377-20, pp.7-8,20-37]. The Republic completed its expropriation in May 2014, paying Repsol the compensation mandated by Argentine law, and receiving title to Repsol's shares. JA__ [Dkt.370, ¶48]; JA__ [Dkt.390, ¶48].

Apart from the Republic's stake, nearly all of YPF's remaining shares are privately owned by minority shareholders, including major private funds, institutional and retail investors, and YPF employees. JA__ [Dkt.370, ¶2]; JA__ [Dkt.390, ¶2]; JA__ [Dkt.377-2, pp.196-97]. YPF's current market capitalization is approximately $14 billion. *See* https://www.nasdaq.com/market-activity/stocks/ypf.

13

## II.    Procedural History

### A.    YPF Prevailed In The Underlying Litigation

On March 4, 2015, Petersen sold its claims to Prospect Investments LLC, a wholly-owned subsidiary of Burford Capital LLC ("Burford"), a litigation funder pursuing the claims.  JA__ [Dkt.370, ¶54].  Petersen then filed suit against the Republic and YPF alleging breach of contract, anticipatory breach of contract, breach of the implied duty of good faith and fair dealing, and promissory estoppel.  JA__ [Dkt.377-43, ¶¶50-85].  Burford also bought Eton Park's claims and, in November 2016, brought a nearly identical lawsuit.  JA__ [Dkt.377-44, ¶¶47-74].

Plaintiffs alleged YPF breached purported obligations in its Bylaws to enforce tender-offer provisions and penalties on shares allegedly acquired in violation of those provisions.  JA__ [Dkt.377-43, ¶¶68-72].  They also alleged that, as a result of the intervention and subsequent expropriation, the Republic "exercised total control of the Company's management," "seized control of the Company's facilities[] and . . . operations," and "manage[d] the Company for its own benefit, rather than that of YPF's shareholders."  JA__ [Dkt.377-43, ¶¶35-40].  Although Plaintiffs alleged the Republic had total control over YPF, they chose not to include a claim for alter ego liability against YPF.  *See generally* JA__ [Dkt.377-43].

14

YPF moved to dismiss on the basis of, among other grounds, FSIA immunity. JA__ [Dkt.33, pp.6-13]. Plaintiffs opposed, asserting YPF's alleged "breaches of contract" fell within the "commercial activity" exception to immunity. JA__ [Dkt. 49, pp.2-3,8-11]; *see also* JA__ [Dkt.49, p.3]. The District Court agreed, and rejected YPF's motion. JA__ [Dkt.63, pp.10-19].

YPF appealed that finding under the collateral order doctrine. In a July 10, 2018, opinion, this Court carefully delineated its limited scope of review – assessing the "gravamen of Petersen's claims" and accepting as true the "theory of the case" and "theory of liability" as "alleged" – and found Plaintiffs adequately pleaded a breach by YPF in Argentina that caused a "direct effect in the United States" under the FSIA's commercial activity exception. *Petersen*, 895 F.3d at 210.

On remand, Plaintiffs' cases proceeded in parallel through approximately three years of extensive fact and expert discovery. JA__ [Dkts.331,340,352]. Plaintiffs sought discovery from YPF about the Republic's involvement in and purported control of YPF dating back to 2012, including:

- "All documents and communications" relating to YPF and:

  - Axel Kicillof (then-Secretary of Economic Policy and Development of the Republic and also the Vice Intervenor in YPF) including "his responsibilities and authority in that position; [and] any commands, directives, orders, or instructions he issued to YPF's employees,

15

officers, agents or other representatives in that position[.]"  JA__ [Dkt.284-23, p.15].

- o  Julio De Vido (then-Minister of Planning, Public Investment, and Services of the Republic and also the Intervenor of YPF), including "any instance in which he objected to or overruled any action or proposed action by the YPF shareholders or the YPF Board of Directors."  JA__ [Dkt.284-23, p.16].

- Discovery into prior YPF shareholders and Board of Directors meetings, including discussions with the Republic about them.  JA__ [Dkt.284-23, pp.17,21].

- All communications between certain employees of YPF and the Republic. JA__ [Dkt.284-23, pp.23-24].

In their briefing and expert reports, Plaintiffs urged the District Court to hold YPF liable because "Argentina controlled YPF," the Company was "materially impaired by its state ownership because management would focus on whatever the state's interests were," and it was an "incorrect premise that the Republic was, and is, independent of YPF."  JA__ [Dkt.49, p.1]; JA__ [Dkt.371, p.21] (cleaned up); JA__ [Dkt.377-36, ¶46] (cleaned up).

In April 2022, the parties cross-moved for summary judgment.  On March 31, 2023, the District Court granted YPF's motion in full and dismissed Plaintiffs' claims against YPF, including "allegations" that had been presumed true at the pleading stage – and held the unambiguous language of YPF's Bylaws did "not impose an obligation on YPF to enforce Sections 7 and 28 [of the Bylaws]."  JA__

16

[Dkt.437, pp.20, 63]; *compare* JA__ [Dkt. 63, p.13] (on motion to dismiss, accepting as true allegations regarding "YPF's failure to enforce the tender offer requirements that are contained in the Bylaws"); *with* JA__ [Dkt. 437, p.24] (on summary judgment, concluding "Sections 7 and 28 are unambiguous and do not impose any duty on YPF . . . YPF was not required to enforce the relevant provisions"). In so holding, the District Court found that Plaintiffs failed to prove the allegations they had relied on at the pleading stage to establish jurisdiction over YPF under the FSIA.

At the same time, the District Court granted Plaintiffs summary judgment as to the Republic, holding it liable for failing to make a tender offer. JA__ [Dkt.437, pp.26-43]. After a three-day damages trial, the District Court, on September 15, 2023, entered final judgment against the Republic for approximately $16.1 billion, and confirmed dismissal of all claims against YPF. JA__ [Dkt.493, p.1]; JA__ Dkt.498, pp.3-4].

Timely notices of appeal (the Republic), cross-appeal (Plaintiffs), and conditional cross-cross-appeal (YPF) were filed. Those appeals were fully briefed, argued on October 29, 2025, and remain pending. *See Petersen*, Nos. 23-7370(L), 23-7463, 23-7614; *Eton Park*, Nos. 23-7376(L), 23-7471, 23-7667.

17

**B.     Plaintiffs Attempt To Relitigate YPF's Liability In Post-Judgment Proceedings Against The Republic**

On March 25, 2024, Plaintiffs purported to serve a Rule 45 non-party subpoena on YPF, JA__ [Dkt.611-1]; JA__ [Dkt.611-2], seeking wide-ranging alter ego discovery from 2012 forward, including: "instances in which . . . Argentina has given orders or instructions to, or has otherwise exercised control over" YPF, "Argentina's participation in appointment of [YPF] officers or directors," "hiring of [YPF] employees," "selection of any vendor or third party with which [YPF] transact[s] business," YPF's "operational decisions, budget, or reserve management," YPF's "organizational structure and reporting relationships;" and all of YPF's "corporate resolutions and board minutes" and related materials, JA__ [Dkt.611-1, Nos.8,9,10,11,12,13,15].

YPF objected, asserting, among other defenses, lack of jurisdiction, improper service, and its status as a prevailing party.  JA__ [Dkt.611-2, pp.2-6]. On April 30, 2024, Plaintiffs filed a pre-motion letter seeking leave for a motion to compel YPF's compliance with the subpoena.  JA__ [Dkt.563].  Critically, Plaintiffs did not identify any basis for the District Court's exercise of jurisdiction over non-party YPF.  At a May 28, 2024 conference – without permitting briefing or addressing the issue of subject matter jurisdiction – the District Court ordered YPF to produce documents from the prior two years.  JA__ [Dkt.611-3, p.54].

18

Plaintiffs have been clear that, in addition to seeking information from YPF about *the Republic's* assets, "the discovery goes to the *distinct issue* of whether *YPF is legally responsible* for satisfying the judgment against the Republic because it is currently the Republic's alter ego[.]" JA__ [Dkt.619, p.2.] (emphasis added). The core purpose of the discovery is to obtain evidence to support Plaintiffs' alter ego theory that YPF is "*liable for the state's debts*," JA__ [Dkt.563, p.1] (emphasis added), "*an appropriate source of funding to satisfy Plaintiffs' judgment against the Republic*," JA__ [Dkt.645, p.1] (emphasis added), and that Plaintiffs "*can look to* [*YPF's*] *assets to satisfy this Court's judgment*," JA__ [Dkt.645, p.1] (emphasis added).

In their efforts to relitigate YPF's alleged liability, Plaintiffs have also subpoenaed at least 18 other third parties seeking information about YPF. JA__ [Dkt.611, p.5]. Relying on YPF's non-party status, Plaintiffs refused to provide notice of those subpoenas to YPF, to disclose any of the documents they received, or even to identify the third parties to whom the subpoenas were issued, unless "YPF agrees to waive any objections or arguments concerning its status as a party for the purposes of post judgment discovery, including any jurisdictional objections." JA__ [Dkt.611, p.5].

19

### C.     YPF's Orders To Show Cause And Supplemental Briefing

On August 12, 2024 – in the face of Plaintiffs' failure to file a formal complaint and their aggressive efforts to pursue discovery in support of their unpled alter ego claim – YPF filed an order to show cause to intervene in the post-judgment proceedings while preserving its jurisdictional objections, and to enjoin, as barred by *res judicata*, Plaintiffs' renewed attempt to pursue liability against YPF.  JA__ [Dkts.610,613].  YPF's papers, filed less than 3 months after the District Court ordered it to produce discovery, sought to intervene "for the limited purpose of contesting Plaintiffs' attempt to hold it liable, as an alter ego or otherwise, for any share of the damages awarded to Plaintiffs against the Republic."  JA__ [Dkt. 610, p.15].  YPF argued Plaintiffs' failure to identify any exception to YPF's FSIA immunity left the District Court without jurisdiction over Plaintiffs' liability-shifting efforts against YPF, and that the District Court – in the exercise of its ongoing duty to assess subject matter jurisdiction – should consider further jurisdictional briefing and argument.  JA__ [Dkt.610, pp.4-5]; JA__ [Dkt.613, pp.16-18]; JA__ [Dkt.618, pp.2-3].

On November 13, 2024, while YPF's applications were pending, this Court decided *Bank Markazi*, holding a court's ancillary jurisdiction to enforce its judgments "does not extend . . . to 'an action to establish liability on the part of a third party,'" including on an alter ego theory.  121 F.4th at 999 (quoting *Epperson*

*v. Ent. Express, Inc.*, 242 F.3d 100, 104 (2d Cir. 2001)). The next day, the District Court, recognizing *Bank Markazi*'s significance, *sua sponte* stayed alter ego discovery and ordered supplemental briefing regarding *Bank Markazi*'s impact on the issues pending before it, JA__ [Dkt.685], which was completed on January 24, 2025, *see generally* JA__ [Dkts.695, 697, 708, 709]. In that briefing, YPF argued that *Bank Markazi*'s holding made clear that Plaintiffs' attempt to pursue YPF through Rule 69 proceedings – without filing a formal claim or identifying an applicable exception to its immunity – is improper. *See, e.g.*, JA__ [Dkt.697, p.1] (*Bank Markazi* "definitively rejected the same kind of post-judgment expansion of jurisdiction and liability that Plaintiffs are attempting against YPF here").

At a July 29, 2025 discovery conference involving solely Plaintiffs and the Republic – and without any prior indication from the District Court that it would be deciding issues relating to YPF – the District Court lifted the stay on alter ego discovery. JA__ [Dkt.772, p.43].

**D.     The District Court's Orders And Instant Appeals**

On September 18, 2025, Judge Preska entered the September Order denying YPF's orders to show cause. SPA1-16. The District Court concluded that YPF's intervention request was simultaneously untimely, *i.e.*, too late, and that it "put[] the cart before the horse," *i.e.*, too early. SPA9-11. The District Court also held that "the Republic, as the majority shareholder of YPF, can adequately protect

21

YPF's interests," SPA8, effectively appointing the judgment debtor to represent YPF in resisting Plaintiffs' efforts to shift the Republic's liability onto YPF. At the same time, the District Court ruled that "Plaintiffs need not provide YPF" with the discovery Plaintiffs received *about YPF* from the other subpoenaed third parties. SPA13-14.

It also rejected YPF's request to enjoin Plaintiffs' pursuit of alter ego liability against YPF as barred by *res judicata*, holding the alter ego claim was not "a cause of action for liability but rather responsibility for the Republic's judgment" and would, in any event, "involve different facts, as the Court would evaluate the status of the Republic's current relationship with YPF." SPA10-11. As such, Plaintiffs were not "pursuing the same damages, for the same alleged harm, relating to the same underlying facts, that they litigated against YPF and lost[.]" SPA11 (quotation marks omitted).

On October 1, 2025, YPF filed for reconsideration/reargument of the September Order because the District Court overlooked binding precedent (including *Bank Markazi*) in denying YPF's orders to show cause and in failing to evaluate its own subject matter jurisdiction given YPF's FSIA immunity, and because its appointment of a third party to represent YPF's interests violated YPF's due process rights. JA__ [Dkt.803, pp.9-14].

On November 10, 2025, Judge Preska entered the November Order, denying YPF's reconsideration motion.  SPA17-24.  Acknowledging the need for some jurisdictional basis as to YPF, the District Court held that Plaintiffs' alter ego theory "does not require an independent basis for jurisdiction" because Plaintiffs could pursue YPF by filing "a claim against the sovereign and a motion to attach the assets of the instrumentality after finding it to be the sovereign's alter ego[.]" SPA20.  For that holding, the District Court relied on *Crystallex*'s application of *Bancec* to expand ancillary jurisdiction despite this Court's express disagreement, in *Bank Markazi*, with that reasoning.  The District Court also found due process was satisfied because "YPF will be given an opportunity to be heard if the Republic moves for the Court to find YPF is an alter ego of the Republic."  SPA23. On the other points raised in YPF's reconsideration motion, the District Court reiterated its prior findings.  YPF timely appealed both the September Order and the November Order; this Court consolidated the appeals.  *See Petersen*, 25-2629(L), 25-2901; *Eton Park*, 25-2630(L), 25-2904.

On December 23, 2025, the District Court stayed alter ego discovery pending resolution of these appeals.  *See* JA__ [Dkt.843, pp.2-4,14] (describing its November Order as holding that "*Bank Markazi* did not preclude the Court from exercising ancillary jurisdiction over YPF in post-judgment proceedings brought against the Republic").

## SUMMARY OF ARGUMENT

The District Court committed reversible error by holding: (I) Plaintiffs' alter ego pursuit of YPF is not a "cause of action for liability but rather responsibility for the Republic's judgment"; (II) Plaintiffs' alter ego pursuit of YPF can proceed under the District Court's ancillary jurisdiction; (III) Plaintiffs can obtain discovery from YPF about its putative alter ego liability without identifying an exception to YPF's immunity or filing a claim; (IV) YPF may not intervene to directly defend itself against Plaintiffs' efforts to pursue it as an alter ego, including to assert its *res judicata* defense; and (V) *res judicata* does not bar Plaintiffs' attempt to relitigate whether YPF "may be liable" for the Republic's actions.

**I.** Plaintiffs admit they are pursuing YPF as an alleged alter ego of the Republic to hold it liable for the judgment against the Republic. Binding precedent recognizes a claim to hold a third party (here, YPF) responsible for the judgment against another (here, the Republic) as an alter ego is a liability-shifting claim. The District Court erred by failing to recognize as much, drawing a false distinction between "a cause of action for liability" and one for "responsibility" for the Republic's judgment.

**II.** A claim to shift liability (or responsibility) for a judgment to a third party not otherwise liable for it is not within the District Court's ancillary

24

jurisdiction; instead, it requires an independent basis for jurisdiction, which Plaintiffs did not plead (and the District Court has not found). The District Court's reliance on the Third Circuit's decision in *Crystallex* to exercise ancillary jurisdiction over Plaintiffs' pursuit of YPF as an alter ego is inconsistent with this Court's precedent – including *Bank Markazi* – and constitutes legal error because liability-shifting theories, such as alter ego, require a direct claim against the supposed alter ego and an independent basis for jurisdiction.

**III.** The District Court committed reversible error by allowing Plaintiffs to obtain discovery about YPF's purported alter ego status, without identifying an applicable exception to YPF's immunity and before any pleading against YPF. Plaintiffs' refusal to file an action against YPF means that none of the FSIA's immunity exceptions could even theoretically apply because they are triggered by a "civil action" against a sovereign instrumentality. *See* 28 U.S.C. § 1330(a). Nor does *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014) permit Plaintiffs to obtain discovery from YPF, an FSIA immune entity, about its own potential liability unless an exception applies to YPF's immunity. Plaintiffs' pursuit of discovery from YPF in the absence of a pleading is doubly improper because federal courts do not permit pre-complaint discovery.

**IV.A.** The District Court's denial of YPF's intervention motion was an abuse of discretion because YPF satisfies the test for intervention, both as of right

25

and by permission. *First*, YPF's motion was timely because it was made without undue delay. The Court applied the wrong legal standard by failing to consider both the prejudice to YPF and Plaintiffs, and the complexity of the issues presented by Plaintiffs' improper pursuit of YPF through Rule 69 proceedings against the Republic. *Second*, the finding that "the Republic, as the majority shareholder of YPF, can adequately protect YPF's interests" was error because it disregards the "strong" presumption of independence from the Republic that the law confers on YPF.

**IV.B.** Barring YPF from directly participating in its own defense violates its due process rights. A judgment cannot be enforced against an alter ego that has been unable to defend itself in the alter ego proceedings. The combination of Plaintiffs' pursuit of YPF through Rule 69 proceedings and the Court's order that YPF will only "be given an opportunity to be heard if the Republic [sic, Plaintiffs] moves for the Court to find YPF is an alter ego of the Republic" inhibits YPF's ability to invoke the protections of the Federal Rules of Civil Procedure and to assert its dispositive *res judicata* defense now.

**V.A.** *Res judicata* bars Plaintiffs' efforts to relitigate YPF's liability because the underlying merits action involved the same parties, and the District Court entered a final judgment on the merits finding YPF not liable for any damages arising from the Republic's actions. During eight years of litigation, Plaintiffs

26

argued that the Republic "exercised total control" of YPF, was not "independent of YPF," and that "Argentina controlled YPF," but Plaintiffs chose not to bring an alter ego liability claim against YPF in the original litigation. *Res judicata* bars Plaintiffs from resurrecting their pursuit of YPF by recycling those allegations under the "alter ego" banner, especially where, as here, they have not shown any change in circumstances to justify their new theory of liability after more than a decade of litigation.

**V.B.** Relitigation of YPF's alleged liability deprives YPF of the fundamental repose *res judicata* provides. Plaintiffs' *ad seriatim* litigation strategy is fundamentally unfair to YPF and undermines the principles and policies that *res judicata* promotes, including judicial efficiency, finality of judgments, and an end to litigation that provides prevailing parties freedom from the threat of liability and the vexations and costs of further suit.

**V.C.** The District Court abused its discretion by refusing to enjoin Plaintiffs' pursuit of alter ego liability against YPF. Absent an injunction, YPF is suffering – and will continue to suffer – irreparable harm by being deprived of the repose to which its victory entitles it, resulting in a lingering cloud over its role as Argentina's largest, independent energy company and causing harm to YPF and its 20,000 employees, minority shareholders, and business partners. The equities and public interest favor injunctive relief to vindicate YPF's rights and the important

27

policies animating preclusion, and to ensure YPF – one of Argentina's largest and most important companies – can continue providing vital energy to Argentina and other countries without facing the possibility of potentially enterprise-crippling damages.

**STANDARD OF REVIEW**

This Court "review[s] the District Court's legal conclusions regarding subject matter jurisdiction under the FSIA *de novo*[.]" *Vera v. Republic of Cuba*, 867 F.3d 310, 315 (2d Cir. 2017); *see also Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 286 (2d Cir. 2011) (*de novo* review applies to "a district court's legal conclusions under the FSIA").

This Court reviews "the denial of the motion for intervention," whether as of right or by permission, "for abuse of discretion." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 128 (2d Cir. 2001). "The district court abuses its discretion if it applies legal standards incorrectly, relies on clearly erroneous findings of fact, or proceeds on the basis of an erroneous view of the applicable law." *Aurelius Cap. Partners, LP v. Republic of Argentina*, 584 F.3d 120, 129 (2d Cir. 2009).

In reviewing a decision on injunctive relief, this Court reviews the District Court's legal holdings *de novo* and the ultimate decision for abuse of discretion. *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 764 F.3d 210, 214 (2d Cir. 2014). "[T]he district court's application of the principles of *res judicata*" is a legal determination that is reviewed *de novo*. *EDP Med. Comput. Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007).

29

## ARGUMENT

**I.     The District Court Erred By Holding Plaintiffs' Pursuit Of YPF As A Purported Alter Ego Is Not Equivalent To A Cause Of Action For Liability**

The District Court fundamentally erred in holding Plaintiffs' (unpled) alter ego claim "against YPF is not a cause of action for liability but rather responsibility for the Republic's judgment." SPA10. That conclusion posits a distinction between "liability" and "responsibility" that does not exist, ignores Plaintiffs' own prior statements to the Court, and disregards well-settled Supreme Court and Second Circuit law that an alter ego claim is, by definition, liability-shifting.

*First*, there is no meaningful difference between "a cause of action for liability" and "responsibility for the Republic's judgment"; both seek to obligate YPF to pay the judgment against the Republic. *Compare Liable*, BLACK'S LAW DICTIONARY (12th ed. 2024) (definitions include "responsible"), and *Liability*, BLACK'S LAW *DICTIONARY* (12th ed. 2024) (definitions include "legal responsibility to another"), with *Responsibility*, BLACK'S LAW DICTIONARY (12th ed. 2024) (definitions cross-reference to the definition of "liability").

*Second*, Plaintiffs have expressly admitted that they want to hold YPF "*liable* for the state's debts[.]" JA__ [Dkt.563, p.1] (emphasis added). Plaintiffs have stated unequivocally that – in addition to seeking the Republic's assets – "the

30

discovery goes to *the distinct issue* of whether *YPF is legally responsible* for satisfying the judgment against the Republic because it is currently the Republic's alter ego[.]" JA__ [Dkt.619, p.2] (emphasis added). Whether characterized as "liability" or "responsibility," Plaintiffs' goal is "enforcing the judgment *against YPF*[.]" JA__ [Dkt.626, p.2] (emphasis added).

*Third*, controlling Supreme Court and Second Circuit case law holds alter ego and veil-piercing claims are, by their very nature, liability-shifting. As the Supreme Court explained in *Peacock v. Thomas*, a veil piercing claim is an "attempt" to "shift[] . . . liability for payment of the judgment from the judgment debtor to" a new party. 516 U.S. 349, 357-58 (1996).

Building on *Peacock*, this Court has "continued to draw a distinction between post-judgment proceedings to collect an existing judgment and proceedings, such as claims of alter ego liability and veil-piercing, that raise an independent controversy with a new party in an effort to *shift liability*." *Epperson* 242 F.3d at 106 (emphasis added). An alter ego claim "present[s] a substantive theory *seeking to establish liability* on the part of a new party not otherwise liable" for the underlying judgment. *Id.* at 107 (emphasis added).

District courts in this Circuit applying *Peacock* and *Epperson* reach the same conclusion: alter ego claims are not "attempt[s] simply to collect a judgment duly rendered by a federal court, even if chasing after the assets of the judgment debtor

31

in the hands of a third party." *Nykcool A.B. v. Pac. Fruit Inc.*, 2012 WL 1255019, at *7 (S.D.N.Y. Apr. 16, 2012) (cleaned up). While "these distinctions might strike a metaphysical note for some . . . they have been long honored by the law and have been recognized by the Supreme Court." *Knox v. Orascam Telecom Holding S.A.E.*, 477 F. Supp. 2d 642, 649 (S.D.N.Y. 2007) (citation omitted). This distinction makes perfect sense because, however Plaintiffs' pursuit of YPF is characterized, they admit they hope to hold it "liable for the state's debts[.]" JA__ [Dkt.563, p.1].

The District Court's conclusion that Plaintiffs' pursuit of YPF as an alter ego does not seek to shift liability to YPF was reversible error.

## II. The District Court Erred In Exercising Ancillary Jurisdiction Over Plaintiffs' Pursuit of YPF As A Purported Alter Ego

The District Court compounded its first error by concluding that Plaintiffs' pursuit of YPF as an alter ego "does not require an independent basis for jurisdiction." SPA20. This holding ignores *Peacock*, in which the Supreme Court rejected "the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." 516 U.S. at 357. Applying *Peacock*, this Court held in *Bank Markazi* that ancillary jurisdiction cannot be used to "establish liability on the part of a third party" who is "not already liable for that judgment." *Bank Markazi*, 121 F.4th at 999 (citation omitted). YPF is "not already liable" for the judgment

32

against the Republic; indeed, it prevailed on liability. Accordingly, *Peacock* and *Bank Markazi* (and their antecedents) squarely foreclose the exercise of ancillary jurisdiction over Plaintiffs' current pursuit of YPF as an alter ego.

To relitigate YPF's liability (now, under an alter ego theory), Plaintiffs need to plead a separate jurisdictional hook because "a post-judgment enforcement proceeding against an instrumentality of the foreign sovereign judgment debtor cannot be supported by ancillary jurisdiction from the proceeding in which the judgment was issued, but must instead have an 'independent basis for jurisdiction.'" *Id.* at 1000 n.5 (quoting *Peacock*, 516 U.S. at 355). Alter ego claims "fall outside the scope of ancillary jurisdiction" precisely because "they 'involve[] new theories of liability not asserted in the [earlier] suit.'" *Id.* at 999 (quoting *Peacock*, 516 U.S. at 358-59 (alteration in original)); *see also Nykcool*, 2012 WL 1255019, at *5, *7-8 (party "must bring a separate action . . . in order to . . . find alter ego and/or successor liability").

The District Court's holding that another "avenue" exists to pursue alter ego liability against YPF in reliance on the Third Circuit's decision in *Crystallex*, SPA20, errs for at least two reasons.

**First**, the Second Circuit expressly rejected *Crystallex*'s conception of ancillary jurisdiction as encompassing alter ego claims against an instrumentality. In *Crystallex*, the Third Circuit concluded that because the district court had

33

jurisdiction over Venezuela (the sovereign judgment debtor), "[t]he [d]istrict [c]ourt properly used *Bancec* to extend its jurisdiction to assets held nominally by PDVSA" (the state instrumentality). 932 F.3d at 138. It is that expansive reading of ancillary jurisdiction that this Court rejected in *Bank Markazi* in finding "to the extent that the *Crystallex* court based its jurisdictional holding on a determination that ancillary jurisdiction extends to post-judgment proceedings against a foreign sovereign's instrumentality that was not party to the underlying merits proceeding, *we disagree*." 121 F.4th at 1000 n.6 (emphasis added). That disagreement follows – indeed is dictated by – this Circuit's repeated recognition that there is a "distinction for jurisdictional purposes . . . between an action to collect a judgment . . . and an action to establish liability on the part of a third party," the latter of which does not fall within a court's ancillary jurisdiction. *Epperson*, 242 F.3d at 104.

That YPF was once a defendant in the underlying litigation, and found to be within the Court's subject matter jurisdiction as to those claims, *Petersen Energía Inversora S.A.U. v. Argentine Republic*, 2016 WL 4735367, at *4-7 (S.D.N.Y. Sept. 9, 2016), *aff'd*, 895 F.3d 194 (2d Cir. 2018), does not alter the analysis, *see Simon v. Republic of Hungary*, 812 F.3d 127, 141 (D.C. Cir. 2016) ("We make FSIA immunity determinations on a claim-by-claim basis, and claims against foreign sovereigns that do not fall within the ambit of an FSIA exception are

34

barred." (cleaned up)). YPF was dismissed and found not liable, putting it in the same jurisdictional position as Bank Markazi as to post-judgment enforcement proceedings: a "third party" who is "not already liable for that judgment." *Bank Markazi*, 121 F.4th at 999. In dismissing the claims against YPF, the District Court necessarily rejected the allegations that previously formed the basis for its exercise of jurisdiction over YPF, so Plaintiffs can no longer rely on those allegations to renew their pursuit of YPF. *See* JA__ [Dkt.618, p.3]. Binding precedent prohibits Plaintiffs from (once again) litigating YPF's liability, but this time in reliance on the Court's ancillary jurisdiction over the Republic, and without the need to establish an exception to YPF's own immunity.

In *Bank Markazi*, this Court considered and explicitly rejected the notion "that *Bancec* may be used to extend ancillary jurisdiction from a merits proceeding against a foreign sovereign to a new proceeding seeking to establish liability for the judgment on the part of the foreign sovereign's agency or instrumentality." 121 F.4th at 1000. As Judge Sack succinctly explained: "The[] principles established in *Bancec* do nothing to alter the limits of ancillary jurisdiction as established in *Peacock*." *Id.* at 1001.

**Second**, in *Crystallex*, as this Court explained, "the plaintiffs brought their post-judgment proceeding against the foreign sovereign itself while seeking to attach assets belonging to the sovereign's instrumentality." *Id.* at 1000 n.6. Here,

35

it is undisputed that Plaintiffs have not made *any* formal filing setting out their alter ego theory. At the same time, Plaintiffs have invoked the District Court's jurisdiction to pursue discovery from YPF about its purported alter ego status, including by seeking to compel compliance with their subpoena.

Even if Plaintiffs *could* – contrary to binding precedent – pursue recovery from YPF under an alter ego theory by filing "a claim against the sovereign and a motion to attach the assets of the instrumentality after finding it to be the sovereign's alter ego," SPA20, they *have not* done so.[3] And they have not identified an exception under the FSIA, which is the "sole basis for obtaining jurisdiction over a foreign state in our courts." *Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 200 (2d Cir. 2016) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989)). Because "the immunity conferred by the FSIA strips courts of both subject matter and personal jurisdiction over the foreign state [or instrumentality]," *id.*, the District Court erred in holding that it "does not require an independent basis for jurisdiction" over Plaintiffs' pursuit of YPF as an alter ego of the Republic, SPA20.

---

[3] As argued above, controlling Supreme Court and Second Circuit precedent forecloses this approach to the extent it relies on the court's ancillary jurisdiction.

36

**III.    The District Court Erred In Permitting Discovery From And About YPF In The Absence Of An Identified Exception To YPF's Immunity And Any Pleading**

The District Court erred in permitting discovery into YPF's purported alter ego status in the absence of a formally pled and established exception to YPF's immunity under the FSIA.  According to the District Court, "YPF puts the cart before the horse" because "[t]o date, the only actions that Plaintiffs have taken with respect to YPF is alter ego *discovery*" and "Plaintiffs have not pursued liability against YPF for Plaintiffs' contract claims since the Court's March 31, 2023 finding" granting summary judgment in YPF's favor.  SPA10.

That conclusion elevates form over substance and ignores Plaintiffs' repeated, vociferous assertions that the purpose of the current discovery-related proceedings is to establish that YPF "may be liable" for the Republic's judgment. JA__ [Dkt.562, p.1]; *see also supra* Argument Section I.  It is also legal error because (<u>A</u>) YPF has immunity unless and until an exception is found to apply; and (<u>B</u>) there is no free-standing right to discovery in the absence of a claim.

**A.    YPF Is Immune Under The FSIA From Discovery About Its Putative Alter Ego Status**

YPF is immune under the FSIA as to any discovery about its own alleged liability.  Foreign sovereigns and their instrumentalities are "presumptively entitled to sovereign immunity" and "presumptively shielded from suit."  *Arch Trading*, 839 F.3d at 200.  That robust immunity is meant to protect foreign

instrumentalities from the "inconvenience of suit," including discovery. *Republic of Philippines v. Pimentel*, 553 U.S. 851, 865 (2008); *see also Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 183-85 (2017) (rejecting arguments that would "mean increased delay, imposing increased burdens of time and expense upon the foreign nation"). That immunity applies even if Plaintiffs' pursuit of YPF could be characterized as "just discovery" from a non-party because "[a] district court may not issue a subpoena or impose contempt sanctions without jurisdiction." *Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co., Ltd.*, 476 F.3d 140, 143 (2d Cir. 2007) (quashing subpoena to non-party Korean instrumentality because "[a]bsent a statutory or treaty exemption, the FSIA grants foreign states immunity from the jurisdiction of any court of the United States" (citing 28 U.S.C. § 1604)).

Nor does merely *alleging* the existence of an alter ego relationship with the Republic strip away YPF's immunity because "instrumentalities of a foreign state are to be accorded a presumption of independent status." *Bancec*, 462 U.S. at 626-27; *see also EM Ltd. v. Banco Cent. De La Republica Argentina*, 800 F.3d 78, 89 (2d Cir. 2015) ("*BCRA*") ("[G]overnment instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." (citation omitted)). "An alter ego relationship is not easily established. . . . This presumption of separateness is a strong one." *Gater Assets Ltd. v. AO*

*Moldovagaz*, 2 F.4th 42, 55 (2d Cir. 2021) (cleaned up). But the November Order ignored that strong presumption and, without jurisdiction to do so, sanctioned Plaintiffs' approach of seeking alter ego discovery without bringing a claim against YPF or establishing an exception to YPF's immunity.

The error is particularly clear because the FSIA's exceptions apply only where there is a "civil *action* against a foreign state[.]" 28 U.S.C § 1330(a) (emphasis added). Even crediting Plaintiffs' mischaracterization of their efforts as "just discovery," they would not constitute a "civil action," so none of the exceptions to YPF's immunity could even theoretically come into play. *See Teamsters Loc. 404 Health Servs. & Ins. Plan v. King Pharms., Inc.*, 906 F.3d 260, 266-67 (2d Cir. 2018) (petition for pre-action discovery is not a "civil action"); Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). And even where a party has alleged an immunity exception in a pleading (which Plaintiffs have not done here), this Court has warned lower courts "must be 'circumspect' in allowing discovery" before jurisdiction under the FSIA has been established. *Arch Trading*, 839 F.3d at 206 (cleaned up).

Below, Plaintiffs relied on *NML* to excuse their failure to make the requisite pleading, but *NML* involved discovery from third-party banks that had not asserted their own immunity under the FSIA, and sought information "in aid of execution of [the] *judgment debtor's assets*" (not any potential liability of the banks). 573

39

U.S. at 142 (emphasis added). Here, "the discovery goes to the distinct issue of whether YPF is *legally* responsible for satisfying" the Republic's judgment, rendering *NML* inapposite.[4] JA__ [Dkt.619, p.2] (emphasis added).

As the Supreme Court explained in *NML*, the discovery there was "directed at third-party banks, not at Argentina itself" so "Argentina's sovereign immunity is not infringed." 573 U.S. at 138 (citation omitted). Here, in contrast, YPF asserts *its own* immunity under the FSIA; it is not relying on "penumbral 'discovery immunity'" derived from the Republic. *Id.* at 144. Because YPF is presumptively immune "from the jurisdiction of any court of the United States," it was error for the District Court to exercise jurisdiction over Plaintiffs' discovery requests in the absence of an exception to YPF's immunity.

As for the District Court's finding that "[t]he present facts are practically identical" to *Crystallex,* that is incorrect as it relates to discovery (as well as the substance of the alter ego allegations). SPA19-22. The district court and Third Circuit opinions in *Crystallex* make no mention of discovery, and the docket reflects no filings or motions related to alter ego discovery. *See generally Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 1:17-mc-00151-

---

[4] Plaintiffs' Republic-specific, non-alter ego discovery requests are not presented in this appeal. Those requests – as to which YPF has objected and reserved its rights – are still subject to litigation below.

LPS (D. Del.). Even if *Crystallex* were good law in the Second Circuit (and it is not), it provides no support for compelling YPF's compliance with the subpoena here.

**B.     Plaintiffs' Pre-Complaint Discovery Into YPF's Putative Alter Ego Status Is Prohibited**

Plaintiffs' pursuit of discovery about YPF's potential liability in the absence of a well-pleaded complaint is doubly improper because "[i]n federal court, pre-complaint discovery is not available to determine whether a claim for relief exists." *In re Petition of Austin*, 2013 WL 5255125, at *1 (S.D.N.Y. July 16, 2013). Plaintiffs ignore that "there is no right to pre-complaint discovery under the Federal Rules of Civil Procedure," *In re Backer*, 2010 WL 2816789, at *11 n.6 (S.D.N.Y. July 16, 2010), and instead insist they can pursue discovery into YPF's purported alter ego status as part of their Rule 69 proceedings. But Plaintiffs have been unequivocal that the discovery they seek is aimed at ultimately pleading an alter ego claim against YPF. It should be barred because it "would serve no purpose, other than as a fishing expedition for evidence in search of a theory that has yet to be asserted." *In re Alper Holdings USA, Inc.*, 398 B.R. 736, 754 (S.D.N.Y. 2008).

Without an identified exception to YPF's immunity, there can be no claim brought against YPF, rendering the discovery not only improper but also irrelevant because it "could not lead to executable assets" and "information that could not

41

possibly lead to executable assets is simply not 'relevant' to execution in the first place." *NML*, 573 U.S. at 144.

Accordingly, even crediting Plaintiffs' mischaracterization of their efforts as "just discovery," they are nevertheless prohibited in the absence of an established exception to YPF's immunity, and an actual pleading against YPF. *See Nykcool*, 2012 WL 1255019, at *5 (party "must bring a separate action" against entity in order to "find alter ego and/or successor liability"); *see also Zenith Radio Corp. v. Hazeltine Rsch.*, 395 U.S. 100, 111 (1969) (alleged alter ego entitled to "its day in court on the [alter ego] question").

## IV. The District Court Erred In Denying YPF's Intervention Motion And Appointing The Republic To Represent YPF's Interests

The District Court erred in denying YPF's intervention motion and appointing the Republic to represent YPF's interests in the post-judgment proceedings because: (A) YPF satisfies all of the factors for intervention both as of right and by permission; and (B) it is a gross denial of due process to bar YPF from directly defending itself against Plaintiffs' attempt to (again) hold it liable for a $16.1 billion judgment.

### A. YPF Satisfies The Test For Intervention As Of Right And By Permission

YPF satisfies the standard for intervention both as of right and by permission. *See* Fed. R. Civ. P. 24(a)-(b). To intervene as of right, a would-be

42

intervenor must: "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *Brennan*, 260 F.3d at 128-29 (citation omitted). Permissive intervention is appropriate where the intervenor "has a claim or defense that shares with the main action a common question of law or fact" and such intervention will not "unduly delay or prejudice . . . the original parties' rights." Fed. R. Civ. P. 24(b).

Given Plaintiffs' repeated statements that they are pursuing YPF to hold it liable for their $16.1 billion judgment, there is no dispute that YPF has an "interest" that may be "impaired by the disposition" of Plaintiffs' alter ego claim. *See Brennan*, 260 F.3d at 129 ("direct, substantial, and legally protectable" interests provide a basis for intervention as of right (citation omitted)).

The District Court erroneously concluded that (1) YPF's request to intervene was "untimely" and (2) "the Republic, as the majority shareholder of YPF, can adequately protect YPF's interests." SPA8-9.

### 1. YPF's Motion Was Timely

The District Court abused its discretion in finding YPF's motion was untimely. The September Order is internally inconsistent on this point, faulting YPF both for not filing its intervention motion soon enough, SPA9, and for putting "the cart before the horse" because "[t]o date, the only actions that Plaintiffs have

43

taken with respect to YPF is alter ego *discovery*," SPA10. It also applied the wrong legal standard.

Timeliness is a fact-driven inquiry; courts must consider not only "how long" the intervenor took to file, but also "whether the existing parties were prejudiced by that delay, whether the movant will be prejudiced if the motion is denied, and unusual circumstances militating either for or against a finding of timeliness." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 182 (2d Cir. 2001). The District Court applied a narrow concept of timeliness, looking primarily at the length of time that elapsed before YPF filed (just three months after being ordered to comply with Plaintiffs' subpoena), without considering prejudice, the novel circumstances in which YPF's intervention arose, and Plaintiffs' own efforts to prevent YPF from uncovering the full scope of their pursuit of alter ego liability against YPF.

Plaintiffs purported to serve YPF with their Rule 45 subpoena on March 25, 2024. JA__ [Dkt.611-1, p.1]. YPF raised multiple procedural and substantive objections. *See generally* JA__ [Dkt.611-2]. In their April 30, 2024, letter seeking leave to file a motion to compel YPF's compliance, Plaintiffs first made explicit their intent to pursue YPF as "an alter ego of the Republic." JA__ [Dkt.562, p.1]. At a May 28, 2024, pre-motion conference, the District Court denied YPF's

44

request for briefing and ordered YPF to produce alter ego discovery.[5]  JA__ [Dkt.611-3, 54:9-16].

Shortly thereafter, Plaintiffs issued a barrage of third-party subpoenas seeking information about YPF as part of their full-scale pursuit of alter ego liability against YPF.  Plaintiffs actively thwarted YPF's efforts to uncover the scope of Plaintiffs' campaign, refusing to provide YPF notice of the subpoenas they issued *about YPF*, copies of the documents they received *about YPF*, or even the identities of the third parties they subpoenaed *about YPF* unless "YPF agree[d] to waive any objections or arguments concerning its status as a party for the purposes of post judgment discovery, including any jurisdictional objections." JA__ [Dkt.611-4, p.3].  YPF, of course, did not agree to the demanded waiver.  On August 12, 2024 – less than three months after the May 28 order compelling YPF's compliance with Plaintiffs' subpoena – YPF moved to intervene "for the limited purpose of contesting Plaintiffs' improper attempt to shift liability for their judgment against the Republic to YPF," JA__ [Dkt.610, p.1], and for an order to show cause to enjoin, pursuant to *res judicata*, Plaintiffs' further pursuit of YPF as a purported alter ego, JA__ [Dkt.613, p.1].

---

[5] The District Court made its decision before fully hearing from YPF's counsel about its objections, even offering "apologies for ruling ahead of you."  *See* JA__ [Dkt.611-3, 46:11-12].

YPF's motion was timely under any standard – particularly given the evolving and unusual process Plaintiffs used to pursue YPF.  *See United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994) ("Timeliness defies precise definition, although it certainly is not confined strictly to chronology.").  *Compare E. Potato Dealers, Inc. v. Dibble & Miller, P.C.*, 363 F. App'x 819, 821 (2d Cir. 2010) (abuse of discretion to deny intervention as untimely where intervenor filed 53 days after notice and "undertook negotiations with the parties in an attempt to protect its interests" in the interim), *with Catanzano v. Wing*, 103 F.3d 223, 232-33 (2d Cir. 1996) (affirming denial of intervention as untimely after 18 months); *Pitney Bowes*, 25 F.3d at 71 (15 months); *Butler*, 250 F.3d at 182 (13 months).

The District Court's narrow focus on the length of time that elapsed between the subpoena and YPF's intervention motion focused on the wrong date (March 2024), SPA8, but it was only later – at and after the May 2024 conference – that the scope of Plaintiffs' pursuit of YPF became clear – in part because Plaintiffs actively thwarted YPF's efforts to learn about it.  JA__ [Dkt.611, ¶12].  Moreover, the District Court failed to identify any prejudice to Plaintiffs from the timing of YPF's motion.  To the contrary, according to the District Court, "To date, the only actions that Plaintiffs have taken with respect to YPF is alter ego *discovery*."  SPA10.  And although the September Order mentions that YPF and Plaintiffs engaged in "meet and confers," SPA8,  it fails to recognize that fact ameliorated –

46

not caused – any prejudice to Plaintiffs because they were on notice of YPF's objections to their discovery requests, *see E. Potato Dealers*, 363 F. App'x at 821 n.1 (no prejudice where the parties were aware of movant's objections prior to intervention).

YPF, in contrast, will suffer significant prejudice if it cannot intervene to raise its distinct defenses – now – against Plaintiffs' liability-shifting campaign. *See Butler*, 250 F.3d at 183 ("[A]ssuming [intervenor's] interest is not otherwise adequately represented, the prejudice . . . of not allowing it to intervene is appreciable."). In the face of Plaintiffs' efforts to shift a $16.1 billion liability onto YPF, the Company is entitled to mount its own specific defenses (as the law in this Circuit requires), not be forced to rely on anyone else to do it.

YPF also meets the standard for permissive intervention because YPF raises "common question[s] of law [and] fact" with the ongoing post-judgment proceedings. Fed. R. Civ. P. 24(b)(1)(B). YPF "will benefit by intervention" by obtaining a platform now to assert *res judicata*, and its participation will "contribute to full development of the underlying factual issues," resulting in judicial efficiency. *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191-92 (2d Cir. 1978). Far from causing "undu[e] delay or prejudice [to] the adjudication of the rights of the original parties," *id*. at 191, YPF's limited intervention to assert its *res judicata* defense may speed resolution of a portion of the post-judgment

enforcement proceedings by ending Plaintiffs' further pursuit of YPF under an alter ego theory that Plaintiffs elected not to bring in the underlying litigation.

Accordingly, the District Court erred in refusing YPF's request for intervention.

### 2. Appointing The Republic To Represent YPF's Interests Violates The Strong Legal Presumption Of Independence To Which YPF Is Entitled

The District Court likewise abused its discretion in concluding that "the Republic, as YPF's majority shareholder, can adequately protect YPF's interests." SPA8. That ruling fails to recognize that the "bar for showing inadequate representation" by the parties to the litigation "is minimal." *Harris-Clemons v. Charly Trademarks Ltd.*, 751 F. App'x 83, 85 (2d Cir. 2018).

Here, YPF is an independent, publicly-traded company with various constituencies to consider and protect, including tens of thousands of employees, minority shareholders of 49% of its equity, bondholders, and many business partners around the world. The Republic is a sovereign with its own varied and differing constituencies and interests, many of which do not concern YPF at all. As such, it was an abuse of discretion for the court to assume that the Republic can adequately represent YPF. *See, e.g.*, *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972) (intervention as of right warranted given "sufficient doubt about the adequacy of representation" and the "minimal" showing needed to find

48

inadequacy); *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 803-04 (2d Cir. 2022) (intervention warranted where named parties "do not necessarily represent the [proposed intervenor's] interest"). That is particularly true given the distinct defenses YPF can assert against Plaintiffs' attempt to relitigate its liability.

The September Order also ignored the "strong" presumption under *Bancec* that YPF is separate from the Republic, unless and until there is an adjudication otherwise. *Gater Assets,* 2 F.4th at 55; *see also Bancec*, 462 U.S. at 626-27. By failing to account for YPF's presumed independence from the Republic, the District Court misapplied binding precedent and further abused its discretion. *See, e.g.*, *Aurelius*, 584 F.3d at 129 (abuse of discretion to "appl[y] legal standards incorrectly . . . or proceed[] on the basis of an erroneous view of the applicable law").

### B. Barring YPF From Directly Defending Itself Against Plaintiffs' Alter Ego Pursuit Violates Its Right To Due Process

The District Court's order barring YPF from directly defending itself against Plaintiffs' alter ego pursuit also violates the due process to which YPF is entitled as a foreign corporate instrumentality. *Gater Assets*, 2 F.4th at 49. In the context of alter ego claims, a judgment cannot be enforced against an alleged alter ego entity "which has never had its day in court on the [alter ego] question." *Zenith*, 395 U.S. at 111; *see also Nykcool*, 2012 WL 1255019, at *5 ("[A] judgment cannot

49

be enforced against an alleged alter ego who has not had an opportunity to litigate whether or not such a relationship did exist." (cleaned up)). *See generally* U.S. CONST. amend. V (no person can "be deprived of . . . property[] without due process of law").

The District Court acknowledged that YPF is entitled to due process, but erroneously concluded that all that requires is YPF "be given an opportunity to be heard *if* the Republic [sic, Plaintiffs] moves for the Court to find YPF is an alter ego of the Republic." SPA22-23 (emphasis added). That narrow view of due process is inconsistent with the law because it diminishes the safeguards to which YPF is entitled under the Federal Rules.

That is precisely why an alleged alter ego is generally named as a party in any proceeding to establish its supposed alter ego status, and is afforded an opportunity to assert its defenses (including as to jurisdiction) without having to wait until the end of the litigation. *See, e.g.*, *Bancec*, 462 U.S. at 613 (putative alter ego appeared as plaintiff); *Bank Markazi*, 121 F.4th at 991-93, 1011 (putative alter ego named as defendant, but court lacked jurisdiction); *First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 173-74 (2d Cir. 1998) (putative alter ego named as defendant); *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 397 F. Supp. 3d 323, 329-31 (S.D.N.Y. 2019) (same).

50

Plaintiffs' abuse of Rule 69 to pursue YPF as a purported alter ego without a formal pleading (or establishing a basis for the Court's jurisdiction), coupled with the District Court's denial of YPF's intervention request, leaves YPF without an obvious platform to assert its *res judicata* defense, or to invoke the other protections under the Federal Rules that "are designed to further the due process of law that the Constitution guarantees." *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 465 (2000); *see also Life Techs. Corp. v. Govindaraj*, 931 F.3d 259, 265 (4th Cir. 2019) (due process safeguards are "reflected in the Federal Rules of Civil Procedure," which dictate an entity be given "a 'fair chance' to respond to allegations made against [it]," and that it be given this "opportunity . . . in a 'reliable and orderly' fashion'" (citations omitted)).

The Federal Rules ensure that a defendant – at the inception of the litigation – understands and has notice of the claims against it, including the alleged basis for the court's jurisdiction; is given an opportunity to test and raise substantive and procedural defenses through motion practice; can assert affirmative defenses; has a meaningful opportunity to fully participate in the discovery process; can present its case at trial; and can seek protection from the court throughout the litigation as necessary. *See, e.g.*, Fed. Rs. Civ. P. 12, 26-37, 38-52, 56.

As discussed above, YPF's rights have already been violated by having been compelled to produce alter ego discovery in the absence of any basis for

51

jurisdiction over it and by Plaintiffs' sanctioned refusal to disclose the full scope of their discovery efforts against YPF unless YPF waives its jurisdictional defenses. If due process means anything, it means that YPF cannot be forced to wait on the sidelines while Plaintiffs secretly build their case against it, denying YPF any chance to shape the metes and bounds of the dispute or the discovery about it.

The District Court's suggestion that YPF would "be given an opportunity to be heard" only at the end of the process ignores the real harm YPF is suffering right now. SPA23. By pursuing liability against YPF through subsequent Rule 69 proceedings, Plaintiffs are creating a liminal space that is fundamentally unfair to YPF. YPF's assets are (once again) in jeopardy as Plaintiffs seek to shift enormous liability to it without filing a claim against it, creating uncertainty and strain on YPF's existing commercial obligations while depriving YPF the typical mechanism – a motion to dismiss – to assert its dispositive defenses. But the District Court would have YPF wait until Plaintiffs "move[] for the Court to find YPF is an alter ego of the Republic" to defend itself. SPA23.

By the end of the process, it will be too late for YPF to meaningfully protect its interests in the third-party discovery process, and it will have been forced to expend time, effort, and resources responding to Plaintiffs' discovery requests that are premised on liability that the summary judgment opinion already ruled YPF does not have. The damage to YPF would be irreparable as it will be forced to

52

relitigate claims it has already defeated with the specter of an enormous judgment looming over it – which is currently being challenged on appeal as unwarranted and substantially overstated. In order to ensure YPF is afforded the due process the law requires, Plaintiffs should be enjoined from further pursuing YPF through Rule 69 proceedings.

## V. The District Court Erred By Finding *Res Judicata* Does Not Preclude Plaintiffs' Relitigation Of YPF's Liability Under An Alter Ego Theory

The District Court erred in permitting Plaintiffs to relitigate YPF's liability – this time under an alter ego theory – because *res judicata* bars that claim. Under the doctrine of *res judicata*, or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were *or could have been* raised in the prior action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (emphasis added). By barring relitigation, *res judicata* provides a "rule of fundamental repose important for both the litigants and for society." *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985). It serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen*, 449 U.S. at 94.

Having subjected YPF to nearly a decade of hard-fought and costly litigation arising out of the 2012 intervention and later expropriation of YPF's shares – and having had their claims rejected – Plaintiffs cannot now start anew and pursue an

53

alter ego theory to hold YPF liable for the very same damages awarded against the Republic (and unsuccessfully sought from YPF) – particularly where Plaintiffs have not identified any intervening change in circumstances relevant to that analysis. The District Court's refusal to enjoin Plaintiffs' attempted "do-over" is error that deprives YPF of the very repose that *res judicata* is designed to provide, and should be reversed.

### A.    Plaintiffs' Alter Ego Theory Is Barred By *Res Judicata*

YPF satisfies the elements for claim preclusion. The underlying merits action involved the same parties, and the District Court adjudicated the merits of Plaintiffs' claims against YPF in connection with the Republic's intervention and subsequent expropriation of YPF shares. JA__ [Dkt.498, p.4].[6] The District Court erred in rejecting YPF's *res judicata* request based on the third element, holding Plaintiffs' alter ego theory was not and could not have been raised in the underlying merits litigation. SPA10-11.

*Res judicata* bars not just claims that were in fact raised in the prior action, but also claims that "*could have been raised*." *Allen*, 449 U.S. at 94 (emphasis

---

[6] The pending appeal of the merits judgment does not impact the *res judicata* analysis because a judgment's "preclusive effect is generally immediate, notwithstanding any appeal." *Coleman v. Tollefson*, 575 U.S. 532, 539 (2015); *see also Petrella v. Siegel*, 843 F.2d 87, 90 (2d Cir. 1988) (judgment on appeal entitled to *res judicata* effect).

54

added); *see also Teltronics*, 762 F.2d at 193 ("This judgment was *res judicata* not only as to what was pleaded, *but also as to what could have been pleaded*." (emphasis added)); *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992) (*res judicata* applies "not only as respects matters actually presented to sustain or defeat the right asserted, but also as respects *any other available matter which might have been presented to that end*" (citation omitted, emphasis added)). When assessing whether a claim could have been raised in a prior action, courts consider whether the previous action involved "the same claim – or nucleus of operative facts" as those asserted in the new action, including whether "the underlying facts are related in time, space, origin, or motivation" and would form "a convenient trial unit." *Soules v. Connecticut, Dep't of Emergency Servs. and Pub. Prot.*, 882 F.3d 52, 55 (2d Cir. 2018). "New legal theories do not amount to a new cause of action so as to defeat the application of the principle of *res judicata*." *Teltronics*, 762 F.2d at 193.

Plaintiffs' own allegations and arguments confirm their alter ego theory could have been raised in the underlying litigation. From their initial 2015 complaint, Plaintiffs maintained the Republic, as a result of the intervention and subsequent expropriation, extensively controlled YPF, its corporate governance, and its decisions, such that the Republic and YPF were essentially one and the same – *i.e.*, that YPF was an alter ego of the Republic. Among other things,

Plaintiffs alleged the Republic "*exercised total control of the Company's management*[,] . . . seized control of the Company's facilities, and began exercising control of the Company's operations." JA__ [Dkt.377-43, ¶¶35-36] (emphasis added). They submitted expert testimony that YPF "operates under the control of the Republic," and that it was an "*incorrect premise that the Republic was, and is, independent of YPF.*" JA__ [Dkt.377-36, ¶¶37,46] (cleaned up, emphasis added). And they argued at summary judgment that the Republic "took control of YPF's management," including the "YPF Board of Directors," JA__ [Dkt.375, p.18]; that "YPF has operated under the control of the Republic of Argentina," JA__ [Dkt.388, p.54] (cleaned up); and that YPF's "management would focus on whatever the state's interests were," JA__ [Dkt.375, p.21] (cleaned up).

Plaintiffs have recycled those same allegations in their post-judgment enforcement proceedings, including:

- Arguing that YPF is "totally, *in the past decade*, in the grip of the government and the politicians who control the government." JA__ [Dkt.592, 35:23-25] (emphasis added).

- Repeatedly relying on events alleged to have occurred in 2012 as evidence of their alter ego theory, including citing documents from 2012 obtained in discovery during the merits litigation. JA__ [Dkt.562, p.2n.6]; JA__ [Dkt.592, 35:10-13]

- Relying on statements about the Republic's voting control over YPF that have been in YPF's SEC filings since at least 2015. JA__ [Dkt.562, p.2]; *see also* JA__ [Dkt.592, 34:25-35:3] ("But [the] fact of the matter is an SEC

56

filing that basically tells shareholders the Republic has sufficient control that YPF can make decisions that favor that shareholder, that is meaningful.").

Plaintiffs' current refrain that YPF has been "totally . . . in the grip of the government" echoes their 2015 allegations of "total" and "seized control," underscoring that the same nucleus of allegations and facts is at issue now. *Compare* [Dkt.592, 35:23-25], *with* JA__ [Dkt.377-43, ¶¶35-40].

Plaintiffs' discovery requests in both proceedings likewise demonstrate Plaintiffs' alter ego theory could have been pursued before. During the underlying merits litigation, Plaintiffs sought discovery relating to the Republic's purported control over YPF following the intervention and subsequent expropriation. *Supra* Statement of the Case Section II.A; *see, e.g.*, JA__ [Dkt.284-23, p.15] (requesting documents relating to "commands, directives, orders, or instructions issued . . . issued to [YPF]"). In the post-judgment enforcement proceedings, Plaintiffs' Rule 45 subpoena sought documents dating back to 2012 related to the same or similar topics. *Supra* Statement of the Case Section III.B; *see, e.g.*, JA__ [Dkt. 611-1, p.8] (requesting documents concerning "instances in which . . . Argentina has given orders or instructions to, or has otherwise exercised control over" YPF).

The substantial overlap of Plaintiffs' arguments, factual allegations, and discovery demands demonstrates Plaintiffs' alter ego theory against YPF "could have been pleaded, in the first action commenced by [Plaintiffs]." *Teltronics*, 762

F.2d at 193. Plaintiffs seek to hold YPF liable for the same damages arising from the same sequence of events and "cannot avoid the effects of *res judicata* by 'splitting' [their] claim into various suits, based on different legal theories[.]" *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000) (citation omitted); *see also Woods*, 972 F.2d at 38-39 (claims involving "[e]ssentially the same underlying occurrence" were barred by *res judicata* because it is the "facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which [plaintiff] chose to frame her complaint").

The District Court's conclusion that Plaintiffs' alter ego claim is distinct from and could not have been raised in the merits litigation because it "turns on the current relationship between YPF and the Republic" was likewise legal error. SPA10. Plaintiffs have not alleged any significant change in the relevant facts since the underlying merits litigation to explain why they could not have raised their alter ego theory ten years ago. To the contrary, Plaintiffs previously argued that, beginning with the intervention in April 2012 and continuing to today, the Republic so dominated YPF that it ceased to be independent of the Republic. That is precisely what they have argued to justify their discovery from YPF now. *See* JA__ [Dkt.562, pp.1-3]; JA__ [Dkt.592, 35:23-25]; *see also Waldman*, 207 F.3d at 112 (facts post-dating first action "do not create a 'new' cause of action" when "the facts *essential to the second* claim were already present in the first suit").

58

Plaintiffs' attempt to justify splitting their claims by suggesting their alter ego case might rely on facts post-dating the judgment does not defeat the application of *res judicata* because if the mere existence of some new evidence prevented application of *res judicata*, it would rarely, if ever, apply. A litigant could simply split its legal theories, take one swing at establishing liability, and then, if unsuccessful, file a subsequent suit citing a new theory and some additional facts that occurred in the interim. But that is not the law, and the District Court erred in concluding otherwise. *See, e.g.*, *Waldman*, 207 F.3d at 110-11 (holding second action was precluded in light of overlapping facts and the "well-established rule that a plaintiff cannot avoid the effects of *res judicata* by 'splitting' his claim into various suits, based on different legal theories"); *Morgan v. Monello*, 2023 WL 6389077, at *5 (S.D.N.Y. Oct. 2, 2023) (dismissing claim as barred by res judicata where purported "new facts" were "nothing more than additional instances of what was previously asserted"), *aff'd sub nom. Morgan v. Hartman*, 2025 WL 615166 (2d Cir. Feb. 26, 2025).

**B.    YPF Is Being Deprived Of The Fundamental Repose To Which It Is Entitled By Virtue Of The Final Judgment In Its Favor**

"[T]he very purpose of the doctrine of *res judicata*" is to ensure "the conclusive character of judgments" and avoid the "uncertainty and confusion" caused by *ad seriatam* litigation. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398-99 (1981) (quoting *Reed v. Allen*, 286 U.S. 191, 201 (1932)). *Res*

*judicata* thus serves the "vital public interest . . . that there be an end to litigation[.]" *Id.* at 401. It is more than "a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts[.]" *Hart Steel Co. v. R.R. Supply Co.*, 244 U.S. 294, 299 (1917) (quotation marks omitted).

YPF's victory in the underlying merits litigation – obtained after great burden – entitles YPF to finality and peace. But Plaintiffs have continued to pursue YPF for the very same damages they did before. This pursuit not only deprives YPF of repose, but is also highly disruptive and damaging to YPF's business, including through the burden and expense of continued litigation and discovery, distraction to the Company's leadership, and impact on its commercial relationships. It has caused concern for YPF's business partners; increased the cost of capital, which could complicate YPF's growth plans and joint ventures related to the same; and unfairly inflicts reputational harm on YPF despite its prior victory on the merits. JA__ [Oct.16,2025 Hr.Tr., 5:24-6:1]; JA__ [Dkt.498, pp.3-4]. Plaintiffs' latest attempt to impose liability on YPF thus plagues it with the very "uncertainty and confusion" that *res judicata* is intended to eliminate. *See Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948) ("The general rule of *res judicata* applies to repetitious suits involving the same cause of action. It rests upon considerations of

60

economy of judicial time and public policy favoring the establishment of certainty in legal relations.").

Nor is it unfair to preclude Plaintiffs' second effort to impose liability on YPF. Plaintiffs could have sued the Republic alone and then, if they secured a judgment against the Republic that remained unsatisfied, sued YPF to try to impose liability for the judgment on YPF as an alter ego under *Bancec*. *See, e.g.*, *BCRA*, 800 F.3d at 83-85 (securing judgment against sovereign and then initiating an action to collect from putative alter ego). Alternatively, Plaintiffs could have sued the Republic and YPF together – as here – and alleged that YPF was not only directly liable to Plaintiffs for its purported breaches of its Bylaws, but also liable for any breaches by the Republic as its alter ego. *See, e.g.*, *First City, Texas-Houston*, 150 F.3d at 173-74 (putative alter ego named as co-defendant). Plaintiffs instead chose to sue YPF only for contractual breaches and promissory estoppel – notwithstanding their allegations that the Republic so extensively controlled YPF that it was no longer independent – and did not pursue alter ego liability against it. Having made that bet and lost, Plaintiffs are precluded by *res judicata* from now seeking a do-over.

### C. The District Court Erred By Denying YPF's Request To Enjoin Plaintiffs From Pursing YPF As An Alter Ego Of The Republic

Given Plaintiffs' failure to file any pleading alleging an alter ego claim and YPF's consequent inability to assert *res judicata* in a motion to dismiss, YPF

61

sought – but the District Court abused its discretion in denying – injunctive relief to stop Plaintiffs' efforts to shift liability to YPF. Injunctive relief is warranted where, as here, the movant faces irreparable injury, for which there is no remedy at law, and where "considering the balance of hardships . . . a remedy in equity is warranted" and "the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

YPF faces irreparable harm as a result of Plaintiffs' pursuit of claims that are barred by *res judicata. See, e.g.*, *In re AOL Time Warner, Inc. Sec. & 'ERISA' Litig.*, 2007 WL 1856550, at *3 (S.D.N.Y. June 27, 2007) ("[A] party suffers irreparable harm when it is required to relitigate in state court issues previously decided in federal court." (gathering case law)). Even if YPF ultimately prevails against Plaintiffs on any alter ego claim that is filed, YPF will have been deprived of the repose to which it was entitled, and will suffer further harm resulting from the pall of uncertainty hanging over its commercial dealings, for which it will have no legal remedy, so long as Plaintiffs' efforts in support of a precluded claim are not enjoined. *See supra* Argument Sections V.A-B.

The equities and public interest likewise favor injunctive relief. Given YPF's victory in the underlying litigation, it is unfair to deny YPF the repose to which it is entitled. YPF should be "relieve[d] . . . of the cost and vexation of multiple lawsuits[.]" *Allen*, 449 U.S. at 94. Finality similarly serves the public

62

interest by "conserv[ing] judicial resources[,] . . . preventing inconsistent decisions, [and] encourag[ing] reliance on adjudication." *Id.*; *see also Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1232 (2d Cir. 1977) (*res judicata* doctrine was "[s]purred by considerations of judicial economy, and a public policy that favored injecting certainty into the legal system").

The District Court abused its discretion in denying YPF's requested injunctive relief on the grounds that "YPF does not face an inappropriate amount of hardship given Plaintiffs have not received payment on an approximately $16 billion judgment from the Republic, a majority shareholder of YPF." SPA13. Plaintiffs' judgment is against the *Republic*, not *YPF*; it therefore provides no basis to deny YPF the repose to which the law entitles it.

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's erroneous rulings and remand the case for issuance of an injunction barring any further pursuit of YPF, or its assets, under the theory that YPF is an alter ego of the Republic, and any further attempt to hold YPF liable for any share of the damages awarded to Plaintiffs against the Republic.

63

Dated:  December 23, 2025

Respectfully submitted,

/s/ *Mark P. Goodman*

Mark P. Goodman
Shannon Rose Selden
James J. Pastore
Wendy B. Reilly
J. Robert Abraham

DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000
mpgoodman@debevoise.com
srselden@debevoise.com
jjpastore@debevoise.com
wbreilly@debevoise.com
jrabraham@debevoise.com

*Counsel to Appellant YPF S.A.*

64

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

This brief complies with the type-volume limitations of Fed. R. App. Proc. 32(a)(7) and Local Rule 32.1(a)(4) because it contains 14,000 words, exclusive of the parts of the brief exempted by Fed. R. App. Proc. 32(f).

This brief complies with the typeface requirements of Fed. R. App. Proc. 32(a)(5) and the type style requirements of Fed. R. App. Proc. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

I certify under penalty of perjury that the foregoing statements are true.

Dated: December 23, 2025

/s/ *Mark P. Goodman*

Mark P. Goodman

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2025, I filed the foregoing brief with the Clerk of Court of the United States Court of Appeals for the Second Circuit through the ACMS system.  I certify that all participants in this case are registered ACMS users and that service will be accomplished by the ACMS system.

Dated:  December 23, 2025

/s/ *Mark P. Goodman*

Mark P. Goodman